UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Madyson O.,[1]

Plaintiff,

v.

Commissioner Social Security Administration,

Defendant.

Case No. 1:25-cv-00307-CL

**OPINION AND ORDER**

**CLARKE,** United States Magistrate Judge.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Madyson O. seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her Supplemental Security Income disability insurance benefits application. The parties consent to the jurisdiction of a magistrate judge. ECF No. 6. A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). With that standard of review applied, the Commissioner's decision is REVERSED, and this case is REMANDED

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

## PROCEDURAL BACKGROUND

On February 14, 2023, Plaintiff filed an application for Supplemental Security Income, alleging disability beginning at birth. Tr. 199-212; Tr. 372.[2] The agency denied the claim both initially and upon reconsideration. Plaintiff then requested a hearing and amended her alleged onset date to February 14, 2023. Tr. 125-35, Tr. 224. In October 2024, Plaintiff appeared for a telephone hearing before the Administrative Law Judge ("ALJ"). Tr. 90-107. On November 1, 2024, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 72-89. The Appeals Council denied review. Tr. 197-98, 1-7. The ALJ's decision became the final decision of the Commissioner from which Plaintiff now seeks judicial review.

## FACTUAL BACKGROUND

Plaintiff was 19 years old on her amended alleged onset date of February 14, 2023. Tr. 372. Plaintiff has severe impairments of autism spectrum disorder, depressive disorder, and anxiety disorder. Tr. 77. Plaintiff has difficulty communicating with others and often relies on her mother to speak in her place at medical appointments. She has chronically poor sleep, sometimes sleeping only a few hours and other times sleeping excessively. Tr. 530. Plaintiff is easily overwhelmed by lights, sounds, and uncomfortable clothing. Tr. 254. She struggles to independently complete basic tasks of daily living such as remembering to bathe, brush her teeth, or feed herself. Tr. 255. "At best," she goes outside once a week; "[a]t worst," only "every few weeks." Tr. 257. She does not drive or leave her house alone. Tr. 96.

---

[2] The Court cites the Transcript of Social Security Administrative Record, ECF No. 8-1, as "Tr. [page number]."

Plaintiff lives with her mother who is approved to provide 218 hours of paid assistance each month as Plaintiff's direct support professional. Tr. 318. Plaintiff briefly attended community college online and received A's. Tr. 97. However, after completing four classes she dropped out "[b]ecause school often provided anxiety for me, which made me unable to complete the work." Tr. 97. When asked how she was able to get A's if her anxiety prevented her from completing the work, Plaintiff testified, "[b]ecause my mother had to assist me often . . . with starting the work and listing out instructions for me in a way that I could understand it." Tr. 97-98. Plaintiff also attended high school online and received a 3.5 GPA with "a lot" of help from her mother. Tr. 98.

When asked by the ALJ at the telephone hearing why she is unable to work, Plaintiff responded, "[w]ith the amount of difficulty understanding instructions and with the amount I need help on a daily basis, I feel like I'm unable to do anything for a long period of time, especially when going outside or going to places." Tr. 98.

**THE ALJ'S FINDINGS**

At step one of the five-step sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 77. At step two, the ALJ determined the following impairments were medically determinable and severe: autism spectrum disorder; depressive disorder; and anxiety disorder. *Id.* At step three, the ALJ found Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 78. The ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information; had a marked limitation in interacting with others; had a moderate limitation with concentrating, persisting, or maintaining pace; and had a moderate limitation for adapting or managing herself. Tr. 78. The ALJ also found that the assertions by

Plaintiff and her mother were insufficient to establish that Plaintiff had a minimal capacity to adapt to changes in the environment to demands that are not already part of daily life. Tr. 79.

Because she did not establish a presumptive disability at step three, the ALJ continued to evaluate how Plaintiff's impairments affected her ability to work. The ALJ resolved that Plaintiff had the residual function capacity ("RFC") to perform a full range of work at all exertional levels except the following nonexertional limitations:

> tasks that do not involve a specific production rate, such as assembly line work or an hourly production quota. She can deal with occasional changes in a routine work setting. The claimant can have no public contact and no direct interaction with coworkers (no teamwork).

Tr. 79.

At step four, the ALJ determined Plaintiff had no past relevant work. Tr. 83. At step five, the ALJ concluded, based on the vocational expert's ("VE") testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff was not disabled because there were a significant number of jobs in the national economy Plaintiff could adjust to perform, such as floor waxer or industrial cleaner. Tr. 84.

## DISCUSSION

The Court finds that the ALJ erred by finding unpersuasive the medical opinions of Tamie Alvarez, LCSW ("Ms. Alvarez") and Jaime Bierhaus, PMHNP-BC ("NP Bierhaus"). In the interest of judicial efficiency, the Court declines to rule on Plaintiff's additional assignments of error regarding the testimony of Plaintiff and her mother.

### I. Medical Opinions

Plaintiff challenges the ALJ's finding that Ms. Alvarez and NP Bierhaus had unpersuasive medical opinions.

"'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(c)(2)). Although the plaintiff's treating provider's medical opinion is not given special weight or consideration, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

**A. Ms. Alvarez**

Beginning in September 2022, Ms. Alvarez, a Licensed Clinical Social Worker, provided Plaintiff weekly to monthly counseling services. Tr. 924. Prior to the administrative hearing, Plaintiff's representative requested copies of Ms. Alvarez's chart notes and additionally contacted Ms. Alvarez to request a treating source and medical source statement. Tr. 925-33. Ms. Alvarez initially provided only a response letter. The letter stated that Plaintiff has "clinically significant symptoms of Generalized Anxiety Disorder, Social Anxiety, Unspecified Depression, and Autism Spectrum Disorder[.]" Tr. 924. Ms. Alvarez's counseling services "focus[ed] on decreasing the severity of [Plaintiff's] symptoms, increasing her ability to regulate emotions and utilize effective coping strategies, and increasing her ability to practice effective communication and navigate relationships with others[.]" Tr. 924. Ms. Alvarez opined that, despite regularly receiving counseling services, Plaintiff "remains unable to attend school in person, struggles to establish personal connections with others, avoids in-person social interactions and settings in

general, and is unable to complete many activities of daily living independently, relying on her mother or other family members to assist her." Tr. 924. Ms. Alvarez wrote:

> As her Mental Health Provider, having completed thorough assessment as well as ongoing treatment, it is my clinical opinion that [Plaintiff] will continue to require assistance with personal care and other activities of daily living, and will not be able to obtain traditional employment in the future due to the substantial deficits in specific areas of functioning, including communication, emotional regulation, executive functioning, and in social situations. Therefore, as a Licensed Clinical Social Worker, I wholeheartedly endorse and support [Plaintiff] in her pursuit to obtain Social Security Disability income, as she would otherwise be unable to financially support herself due to her limitations which are persistent and permanent.

Tr. 924.

The ALJ rejected Ms. Alvarez's statement, finding it "neither valuable nor persuasive." Tr. 82. The ALJ explained that Ms. Alvarez's submission amounted to a conclusory statement on the issue of disability, "an issue that is reserved to the Commissioner . . . ." Tr. 82 (citing 20 C.F.R. § 416.920b(c)(3)). The Court disagrees. Ms. Alvarez's endorsement of Plaintiff's pursuit of supplemental security income and her statement that Plaintiff "will not be able to obtain traditional employment in the future" were not conclusions like those described in 20 C.F.R. § 416.920b(c)(3) that are reserved for the Commissioner. Tr. 924. Rather, Ms. Alvarez provided a clinical opinion of Plaintiff's "*likelihood* of being able to sustain full time employment given the many medical . . . impairments [she] face[d.]" *Hill v. Astrue*, 698 F.3d 1153, 1155 (9th Cir. 2012). Ms. Alvarez's assessment was based on objective medical evidence supported by the record, such as Plaintiff's avoidance of in-person interactions and settings in general, and her inability to independently complete many activities of daily living. Tr. 924. Ms. Alvarez noted that these limitations persisted despite ongoing treatment. Tr. 924.

In determining whether the ALJ's decision was supported by substantial evidence, the Court may also consider post-hearing evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d

1157, 1163 (9th Cir. 2012). Ms. Alvarez subsequently completed the treating source and medical source statement previously requested by Plaintiff, which Plaintiff submitted to the ALJ twice, and then to the Appeals Council. Tr. 45-70, 8-36. In the statement, Ms. Alvarez explained the nature and frequency of the treatment she provided Plaintiff. Tr. 46. The statement described Plaintiff's symptoms and how those symptoms limited Plaintiff's ability to function in a work setting. Tr. 47. Ms. Alvarez found that Plaintiff would likely be off task at least 15% of the workday due to sensitivity to extraneous stimuli, difficulty filtering out stimuli, and being easily overwhelmed by multiple tasks, even when seemingly singular with multiple steps. Tr. 52. She also opined that Plaintiff would be absent more than four workdays per month due to difficulty functioning in even a low stimulation setting with minimal expectations and opportunities for interaction. Tr. 52-53. Ms. Alvarez reported that Plaintiff's symptoms included difficulty with sleep, sensory issues, low frustration tolerance, difficulty with emotional regulation and communications, high anxiety, and difficulty leaving the house. Tr. 47.

Ms. Alvarez's statement was not a legal conclusion on Plaintiff's entitlement to benefits. Instead, Ms. Alvarez provided an assessment of the degree and likelihood that Plaintiff's symptoms would interfere with Plaintiff's ability to sustain a simple, routine, low stress job, which Ms. Alvarez found would be "highly unlikely." Tr. 47.

Ms. Alvarez's assessment was based on Plaintiff's medical history, diagnosis and prescribed treatment and response. Tr. 49. Her findings were also consistent with the overall record. *E.g.*, Tr. 415, 372, 526-26 (Plaintiff relied on her mother for appointments outside the home); Tr. 415, 373, 400, 391, 614, 604, 665, 690, 886, 871, 855, 828, 901 (affect significantly anxious, restricted, or blunt); Tr. 528 (impaired adaptive functioning). The ALJ's explanation

was not supported by substantial evidence, and she therefore erred in rejecting Ms. Alvarez's medical opinion.

**B. NP Bierhaus**

NP Bierhaus, a board certified psychiatric mental health nurse practitioner, provided Plaintiff with regular treatment through Sky Lakes Behavioral Health. Tr. 792. In a written statement from July 2024, NP Bierhaus stated that she began seeing Plaintiff in August 2022 and saw her every three months for medication management. Tr. 792. The ALJ noted that NP Bierhaus did not actually start seeing Plaintiff until November 2023. Tr. 83. However, Plaintiff had been receiving treatment from a different provider at Sky Lakes Behavioral Health since August 2022. Tr. 504.

NP Bierhaus reported that Plaintiff was unable to focus or activate executive functioning skills in her daily living routine. Tr. 793. NP Bierhaus noted Plaintiff's depressive symptoms which caused irregular sleep, and her anxiety symptoms which led to panic attacks in social settings. Tr. 793. Plaintiff was limited in any work or social setting due to activating acute anxiety symptoms. Tr. 793. Her ability to function was affected even at family gatherings. Tr. 793.

NP Bierhaus determined that "[d]ue to acute and exacerbating symptoms" Plaintiff would be extremely limited her ability to do work-related activities on a sustained basis. Tr. 793, 796. An "extreme" limitation means "[t]here is no useful ability to function in this area." Tr. 795. "'Sustained basis' means the ability to perform work-related activities eight hours a day for five days a week, or an equivalent work schedule." Tr. 795. For example, NP Bierhaus opined that Plaintiff's autism and anxiety would impose an extreme limitation in her ability to understand, remember, and carry out simple and complex instructions; make judgments on simple and complex work-related decisions; interact appropriately with the public, supervisors, and

coworkers; and respond appropriately to usual work situations and changes in a routine work setting. Tr. 796.

NP Bierhaus explained that Plaintiff's exacerbating symptoms of anxiety prevented application of executive functioning skills and hindered all social working relationships due to panic attacks. Tr. 796. Acute symptoms of anxiety also impacted Plaintiff's ability to focus and carry out daily duties. Tr. 797. Her symptoms impacted public interaction and prevented her from attending events and grocery shopping. Tr. 797. She could not manage benefits in her own best interest. Tr. 798. She would be off task at least 15% of a workday due to panic attacks, lack of focus, memory deficits, and organizational thought processes. Tr. 798. She would be absent more than four workdays per month due to anxiety symptoms, panic attacks, depressive symptoms, and inability to get out of bed. Tr. 798-99.

The ALJ found NP Bierhaus's opinion unpersuasive. Tr. 83. She explained:

> Bierhaus assessed "extreme" limitations across all work-related activities listed[.] . . . While the source cites some symptoms, their own treatment notes do not support a finding that the claimant has "no useful ability to function" as "extreme" is defined on the form. For example, the opinion asserts the claimant cannot understand, remember, or carry out simple or complex instructions, yet she engaged in college classes (Ex. 8F/5-11; 9F/4-13; 13F/3140). An "extreme" limitation in interacting appropriately with others is not consistent with the claimant's ability to interact with Bierhaus (Ex. 9F/4-13; 13F/62-72, 46-55, 31-40, 4-12; 14F). As discussed above, the claimant did not report panic attacks but for one instance (Ex. 9F/5; 8F/5; 13F/62, 31, 4; 14F/4). . . . Finally, the evidence of record does not show a change in function since the last state agency consultant determination (Ex. 4A; 13F-15F).

Tr. 82-83.

The ALJ's reasons for rejecting NP Bierhaus's opinion are mismatched with what NP Bierhaus was actually assessing, namely, Plaintiff's ability to conduct work-related activities for eight hours a day for five days a week. Plaintiff's ability to complete four online college courses over two semesters with her mother's assistance does not contradict NP Bierhaus's opinion that

Plaintiff had no useful ability to work independently for 40 hours a week outside the home. In other words, NP Bierhaus did not assess Plaintiff's ability to understand, remember, or carry out simple or complex instructions in general; she was evaluating Plaintiff's ability to understand, remember, or carry out simple or complex instructions in a workplace setting on a sustained basis. Similarly, Plaintiff's ability to interact with NP Bierhaus during medical appointments with her mother's help is entirely consistent with NP Bierhaus's opinion regarding Plaintiff's inability to sustainably function in a standard work setting.

Defendant argues that NP Bierhaus's explanation that Plaintiff's social working relationships were hindered by panic attacks is not supported by the treatment notes, which showed Plaintiff only reported once to NP Bierhaus that she had a panic attack. However, the record shows that the frequency of Plaintiff's panic attacks decreased significantly only after she transitioned to online school, and NP Bierhaus began treating Plaintiff after this transition. Tr. 373. Therefore, NP Bierhaus's opinion that Plaintiff cannot function in a sustained workplace setting is consistent with the evidence, which shows Plaintiff mitigated her panic attacks and managed her symptoms by remaining at home.

NP Bierhaus's opinion regarding Plaintiff's inability to function on a sustained basis in a work-place setting was consistent with the record and supported by substantial evidence. The ALJ erred in rejecting NP Bierhaus's opinion.

The ALJ also rejected NP Bierhaus's opinion because it was inconsistent with the opinions of the agency consultants, which the ALJ found "generally persuasive taken as whole." Tr. 82. The ALJ noted that the record did not show a change in function since the reconsideration determination, which assessed that Plaintiff only had a moderate limitation in her ability to respond to changes in the work setting. Tr. 83, Tr. 120. However, the agency consultant's

assessment was internally inconsistent. For example, on reconsideration, the agency consultant's opinion relied on evidence that Plaintiff's "[i]mpulse control was fair to poor[,]" yet rated Plaintiff as "Not Significantly Limited" in her "ability to be aware of normal hazards and take appropriate precautions." Tr. 119, 123. The agency consultant also cited evidence that Plaintiff "is homeschooled due to not liking crowds and getting easily distracted and bothered by others" yet rated Plaintiff as "Not Significantly Limited" in her "ability to work in coordination with or in proximity to others without being districted by them." Tr. 119, 122. The agency consultant's opinion was internally inconsistent; therefore, the ALJ erred in using it to discount the persuasiveness of the NP Bierhaus's opinion.

Moreover, the agency consultant's opinions relied on substantial evidence that supports rather than undermines NP Bierhaus's findings. *E.g.*, Tr. 109 (hyperreactive to sensory input, poor eye contact, odd gestures, socially awkward comments); Tr. 119 (mother did most of the talking, mood was anxious, social behaviors odd, repeatedly misunderstood questions and required explanation).

## II. REMEDY

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The issue turns on the utility of further proceedings. *Garrison v. Colvin*, 759 F.3d 995, 1019, 1021 (9th Cir. 2014). Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required

to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the Court concludes the credit-as-true standard is satisfied and that remand for the payment of benefits is appropriate. The ALJ failed to provide legally sufficient reasons to reject the medical opinions of Ms. Alvarez and NP Bierhaus. The record has been fully developed, including treatment notes spanning the relevant time period and opinions from several medical sources. Further proceedings would serve no useful purpose. Allowing the Commissioner to decide the issue again would create the precise "unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" that the Ninth Circuit is trying to prevent. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Crediting Ms. Alvarez and NP Bierhaus's medical opinions as true, the record reflects that Plaintiff could not do work related activities on a sustained basis. The VE testified that "[s]omeone that is off task 10 percent or more of the time when compared with other workers performing that same job function would be terminated due to productivity[,]" and that missing work more than once a month on any sort of consistent basis would result in termination. Tr. 105-06. Relying on Plaintiff's medical history, diagnosis, and response to prescribed treatment, Ms. Alvarez and NP Bierhaus each opined that Plaintiff's symptoms would prevent her from meeting the minimum standards necessary to avoid termination. Tr. 52-53; Tr. 798-99. When properly credited, these medical opinions establish that Plaintiff cannot sustain performance and

attendance within the customary tolerances of full-time competitive work, and she instead requires a level of support that is more consistent with accommodated employment. Having closely reviewed the parties' briefing and record, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. The Court therefore remands this case for the calculation and payment of benefits. *See, e.g.*, *Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022); *Varela v. Saul*, 827 F. App'x 713, 714–15 (9th Cir. 2020).

Having determined that Plaintiff is entitled to remand for an award of benefits, based on the ALJ's error above, and in the interests of judicial efficiency, the Court declines to conduct a full analysis of all of the assigned errors alleged by Plaintiff. The Court has considered the briefing of the parties and the record as a whole and orders the instructions below to the ALJ on remand.

## CONCLUSION

The Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

DATED this 6 day of November, 2026.

MARK D. CLARKE
United States Magistrate Judge